IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SILAS MARTIN, #145609, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15-CV-228-MHT |
| | ) | (WO) |
| | ) | |
| LT. COREY L. BENNETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Silas Martin, an indigent state inmate, challenging actions which occurred during a prior

term of incarceration at the Ventress Correctional Facility.[2]  Martin names Lt. Corey L.

Bennett and Officer Joseph Wright as defendants in this cause of action. Specifically,

Martin asserts that the defendants acted with deliberate indifference to his safety when

they failed to protect him from an unprovoked and random attack by inmate Tremaine

Burford on February 18, 2015.  *Complaint – Doc. No. 1* at 5.  Martin also alleges that

defendant Bennett denied him due process by placing him in the Restricted Privilege

Dorm without notification of the reason for placement in this dorm.  *Id.*  Finally, Martin

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2]The last address Martin provided to the court lists his address as the Easterling Correctional Facility.  *See Martin v. Harris, et al.*, Civil Action No. 2:14-CV-1184-MHT-SRW (M.D. Ala.) – Doc. No. 35.

complains that while housed in the Restricted Privilege Dorm he was "denied exercise times." *Id*. at 6. Martin seeks a declaratory judgment, injunctive relief and monetary damages for the alleged violations of his constitutional rights. *Id*. at 7.

The defendants filed a special report, supplemental special report and relevant evidentiary materials in support of their reports, including affidavits and prison records, addressing the claims presented by Martin. In these filings, the defendants deny they acted in violation of Martin's constitutional rights.

The court issued an order directing Martin to file a response, supported by affidavits or statements made under penalty of perjury and other evidentiary materials, to the arguments set forth by the defendants in their report. *Order of December 2, 2015 – Doc. No. 31* at 2. This order specifically cautioned the parties that "**unless within fifteen (15) days from the date of this order a party files a response in opposition which presents sufficient legal cause why such action should not be undertaken** … the court may at any time [after expiration of the time for the plaintiff filing a response to the order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Id*. at 3. Martin filed a response and supporting affidavit in opposition to the defendants' reports. *Docs. No. 33* and *33-1*.

Pursuant to the December 2, 2015 order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response in opposition, the court concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (explaining that summary judgment is appropriate when non-moving party fails to present appropriate evidence in support of a requisite element of the case on which the non-moving party bears the burden of proof at trial).

The defendants have met their evidentiary burden. The burden therefore shifts to Martin to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may … grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving

party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable … or is not significantly probative …

summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions …, in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record … [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in

substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Martin v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Martin has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III. DISCUSSION[4]

### A. Absolute Immunity

To the extent that Martin seeks monetary damages from the defendants in their official capacities, the defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

---

[4]The court limits its review to the alleged constitutional violations identified in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to that theory).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B. Deliberate Indifference to Safety

1. <u>Legal Standard</u>. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the

official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). Thus, "not … every injury suffered by one prisoner at the hands of another … translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of … the prison staffs and administrative personnel. ... They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.' *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)[.]" *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc) [*abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)]." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least

some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm … exist[ed]. Second, once it is established that the official [was] aware of this substantial risk, the official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028-29. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference… . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' … [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38; *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care

for the prisoner's interests or safety… . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)… . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. … Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

Consequently, to proceed beyond the properly supported motion for summary judgment filed by the defendants, Martin must first demonstrate an objectively substantial

risk of serious harm existed to him from inmate Burford and then show "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Martin must next satisfy the subjective component. To do so, Martin "must [show] that the defendant[s] subjectively knew that [he] faced a substantial risk of serious harm [from Burford]. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

2. <u>Relevant Facts</u>. In his complaint, Martin states that "[o]n February 18, 2015, [he] was assaulted by another inmate for no reason." *Complaint – Doc. No. 1* at 5. The assault occurred as Martin sat on his bed in Dorm-E1. *Incident Report – Doc. No. 27-1* at 2. Martin immediately reported the incident to defendant Wright, the officer assigned as the rover for Dorm-E1, and tentatively identified inmate Tremaine Burford as his

attacker. *Id.* "Officer Wright approached inmate Burford, placed him in handcuffs, and escorted him to the Shift Commander's Office." *Id.* Correctional officers, including defendant Bennett who had just arrived for his shift, questioned both Martin and Burford regarding the attack, and Burford adamantly denied assaulting Martin. *Id.* After speaking with inmates Martin and Burford, the officers proceeded to obtain information from other inmates in Dorm-E1. However, after reviewing all of the information collected from the participants and witnesses, the officers could not determine whether Burford had actually assaulted Martin. *Id.* at 2. Defendant Bennett therefore provided Martin and Burford an opportunity to sign an "inmate living agreement." [5] *Complaint – Doc. No. 1* at 5; *Incident Report – Doc. No. 27-1* at 2. Martin refused to sign the living agreement and advised Bennett that to do so would "endanger his life[.]" *Complaint – Doc. No. 1* at 5. Based on Martin's statement that he feared for his life, Bennett determined that Martin should be placed in the Restricted Privilege Dorm for his protection. *Id.* This dorm houses all protective custody inmates and inmates held in segregation, both disciplinary and administrative. *Aff. of Karla Jones – Doc. No. 3-1* at 2. ("Ventress does not have a Protective Custody Unit to house inmates desiring or needing protection from other inmates in general population, and therefore all inmates that are kept out of general population are assigned to the Restricted Privilege Dorm. The Restricted Privilege Dorm houses the inmates segregated for administrative purposes as well as those segregated for

---

[5] An inmate living agreement is a document in which inmates acknowledge that they have resolved their problems and can live together in the facility without further incident.

disciplinary purposes. Regardless of the reason for placement [in the] Restricted Privilege Dorm, inmates do not have access to televisions, telephones, visitation or canteen.").

A correctional officer escorted Martin to the health care unit for evaluation. A nurse conducted an examination of Martin and noted an "abrasion on [his] upper inner lip." *Body Chart – Doc. No. 27-1* at 4. Upon completion of her examination, the nurse released Martin to correctional officials for return to his assigned area. Prior to his placement in the Restricted Privilege Dorm, correctional officials provided Martin written notice that he "was placed in [this dorm] … for … protective custody." *Restricted Privilege Dorm Assignment Notification – Doc. No. 30-1* at 17. Martin acknowledged receipt of this notice by signing the document. *Id.*

3. <u>Findings</u>. Martin alleges that defendants Bennett and Wright acted with deliberate indifference to his safety with respect to the random attack perpetrated against him by inmate Burford. Martin's specific complaint is that defendant Wright was not in the dorm at the time of the attack. Martin, however, does not allege that he had told the defendants that he was in danger of being attacked by inmate Burford. Moreover, the record is devoid of evidence that Martin notified any prison official of a previous incident or credible threat made by inmate Burford from which the official could infer that a substantial risk of harm existed to Martin prior to the attack at issue. There is no evidence before the court that the defendants had knowledge of any impending risk of harm, substantial or otherwise, posed by inmate Burford to Martin.

In sum, there is no evidence before the court of the "objectively substantial serious risk of harm" posed by inmate Burford to Martin prior to the February 18, 2015 attack that is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028-29. Furthermore, even if Martin had satisfied the objective component, his deliberate indifference claim nevertheless fails as he presented no evidence that the defendants were subjectively aware of any risk of harm to him posed by inmate Burford prior to the assault. *Johnson*, 568 F. App'x at 722 (holding that district court properly dismissed complaint for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [inmate-attacker]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt [from this particular inmate]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) ("[W]e readily conclude the district court did not err by dismissing [Plaintiff's] failure-to-protect charge for failure to state a claim… . [B]ecause [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006)

(holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Chatham v. Adcock*, 334 F. App'x 281, 293-294 (11th Cir. 2009) (Where Plaintiff did "not identif[y] any specific 'serious threat' from [fellow inmate]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"). In light of the foregoing, summary judgment is due to be granted in favor of the defendants on Martin's deliberate indifference claim.

### C. Cruel and Unusual Punishment

As previously stated, correctional officers placed Martin in the Restricted Privilege Dorm on February 18, 2015 due to his request for protection. On March 18, 2015, during his confinement in the Restricted Privilege Dorm, Martin received a disciplinary for failure to obey a direct order. *Disciplinary Report – Doc. No. 30-1* at 5. After a disciplinary hearing on March 27, 2015, the hearing officer adjudged Martin guilty of this charge and imposed sanctions of loss of canteen, telephone and visitation privileges for 60 days and confinement in disciplinary segregation for 45 days. *Id*. Martin served his disciplinary segregation time in the Restricted Privilege Dorm and was released to general population on May 29, 2015. *Aff. of Karla Jones – Doc. No. 30-*1at 3.

Martin complains that while in the Restricted Privilege Dorm he did not receive adequate time to exercise, and lost canteen, visitation, telephone and television privileges. *Complaint – Doc. No. 1* at 6. Martin alleges that these conditions violated his constitutional rights as protected by the Eighth Amendment. The defendants deny that the conditions of the Restricted Privilege Dorm constituted cruel and unusual punishment so as to violate the Constitution. Although the defendants concede that Martin did not have access to various privileges while housed in the Restricted Privilege Dorm, they assert that, at all times, Martin had the ability to exercise — either in his cell with few restrictions, or outdoors during the five hours per week allowed for outside exercise, weather permitting. *Aff. of Karla Jones – Doc. No. 30-1* at 2; *Restricted Privilege Dorm Orientation – Doc. No. 30-1* at 18.

Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Prison conditions which may be "restrictive and even harsh, [] are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth

Amendment. *Id*. Conditions, however, may not be "barbarous," nor may they contravene society's "evolving standards of decency." *Id*. at 345-346. "'[T]he Constitution does not mandate comfortable prisons.' … Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.'" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (citing *Rhodes*, 452 U.S. at 347-349. Although the Constitution "does not mandate comfortable prisons … neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes*, 452 U.S. at 349). Thus, it is well settled that the conditions under which a prisoner is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care[.]" *Farmer*, 511 U.S. at 832. For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Crosby*, 379 F.3d at 1289-1290.

The Eighth Amendment prohibits cruel and unusual punishments; it "does not outlaw cruel and unusual conditions." *Farmer*, 511 at 837 (internal quotation marks omitted). The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary

infliction of pain, [or] … [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes,* 452 U.S. at 347. "Conditions … alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency ... . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347.

In a case involving conditions of confinement generally, or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "***[s]ome*** conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need… . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment

when no specific deprivation of a single human need exists." *Wilson v. Seiter,* 501 U.S. 294, 304-305 (1991) (emphasis in original).

A prison official may likewise be held liable under the Eighth Amendment for acting with deliberate indifference regarding conditions to which an inmate is subjected when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828; *Carter*, 352 F.3d at 1349 (holding that defendant must have been subjectively aware of a substantial risk of serious harm to have the requisite culpable state of mind). *Brown*, 894 F.2d at 1537 (holding that failure to act constitutes deliberate indifference only when "[t]he known risk of injury [is] a strong likelihood" and not "a mere possibility[.]" As the foregoing makes clear, negligence provides no basis for relief under section 1983. *Id.*

Despite Martin's allegations regarding the temporary loss of various privileges and alleged lack of exercise time while confined in the Restricted Privilege Dorm, he does not establish that the challenged conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. The conditions referenced by Martin, although uncomfortable, inconvenient, unpleasant and/or objectionable, were not so extreme as to violate the Constitution. *See Baird*, 926 F.2d at 1289. Furthermore, Martin fails to demonstrate deliberate indifference or reckless disregard by the defendants with

respect to his health or safety relative to these conditions. Specifically, Martin does not identify any particular condition of which the defendants were aware from which an inference could be drawn that a substantial risk of serious harm existed to him. The record is also devoid of any evidence showing that the defendants drew the requisite inference. Consequently, summary judgment is due to be granted in favor of the defendants on Martin's claims challenging the conditions of the Restricted Privilege Dorm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

## D. Placement in the Restricted Privilege Dorm – Due Process

Martin appears to challenge his placement in the Restricted Privilege Dorm on February 18, 2015 as violating his procedural due process rights. Specifically, Martin asserts that he has resided in the Restricted Privilege Dorm for "(28) days and [did] not receive[] any documents whatsoever notifying [him] of the reason(s)" for his placement in this dorm. *Complaint – Doc. No. 1* at 6.

Initially, the court notes that Martin concedes that he advised defendant Bennett prior to his placement in the Restricted Privilege Dorm that he feared for his safety from another inmate and sought protection from this inmate. *Id*. at 5. Moreover, it is undisputed that Martin signed a "Restricted Privilege Dorm Assignment Notification" on February 18, 2015 which identified "protective custody" as the reason for his placement in this dorm. *Doc. No. 30-1* at 17. It is likewise undisputed that inmates at Ventress who

seek protective custody are placed in the Restricted Privilege Dorm, as there is no protective custody unit at this facility. *Aff. of Karla Jones – Doc. No. 30-1* at 2. As stated above, while in the Restricted Privilege Dorm, Martin had no store, telephone, television or visitation privileges, and received limited outdoor exercise time but had few restrictions on the ability to exercise while indoors. Under the circumstances of this case, Martin is entitled to no relief on his due process claim.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-86 (noting temporary

confinement of inmate in disciplinary segregation does not implicate a constitutionally protected liberty interest); *Matthews v. Moss*, 506 F. App'x 981, 983 (11th Cir. 2013) (holding that the district court did not err in dismissing due process claims because the "complaint did not allege the deprivation of a liberty interest protected by the Due Process Clause" as "administrative confinement for short periods of 24 days and 18 days does not impose an 'atypical, significant deprivation' sufficient to give rise to a constitutionally protected liberty interest.") (citing *Sandin*, 515 U.S. at 485-487); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *See Sandin*, 515 U.S. at 485. In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Thus, the deprivations imposed upon Martin did not "exceed the sentence [imposed by

the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Martin complains involved the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court has written,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223 (2005).

Simply put, Martin's confinement in the Restricted Privilege Dorm for a limited period of time upon his request for protection, and thereafter as a disciplinary sanction, did not deprive him of a state-created liberty interest. *See Sandin*, 515 U.S. at 486 (confinement in disciplinary segregation for thirty days did not violate the Constitution or impinge on a state-created liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding that confinement in segregation for two months did not deprive inmate of a constitutionally protected liberty interest).

> With respect to [Plaintiff's] loss of canteen, telephone, [television] and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation. The Court finds the Constitution does not grant an inmate a right in visitation, canteen, [television] and telephone privileges. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S.Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Sec'y, Fla. Dep't of Corrs.*, 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that the one-year loss of visitation privileges did not implicate a state-created liberty interest as there was no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); *Walker v. Loman*, CA 06–0896–WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). Moreover, the Alabama

courts have determined a prisoner does not have a state-created liberty interest in store, telephone, [television] and visitation privileges. *Dumas v. State*, 675 So.2d 87, 88 (Ala.Crim.App.1995).

An inmate's ability to visit, to shop, [to watch television] and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485, 115 S.Ct. at 2301. . . . Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of [action] that should be expected by a prisoner as an incident to his criminal sentence. *See Id*. at 475, 485, 115 S.Ct. at 2296, 2301. Thus, [Plaintiff] does not have a liberty interest in canteen, visitation, [television] and telephone privileges to which due process attaches.

*Bass v. Wilson, et al.*, 2015 WL 4742473, at *5-*6 (S.D. Ala. Aug. 10, 2015).

Applying the *Sandin* inquiry, it is clear that the temporary loss of canteen, telephone, television and visitation privileges, limited outdoor exercise time and short-term confinement in the Restricted Privilege Dorm, "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, the court concludes that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Consequently, due process did not attach to Martin's placement in the Restricted Privilege Dorm and summary judgment is therefore due to be granted in favor of the defendants on this claim.

## E. Equal Protection

To the extent that the complaint can be construed to allege a violation of equal protection based on Martin's treatment while in protective custody at Ventress, as opposed to the treatment of inmates in general population at this facility, this allegation

fails to state a claim on which relief may be granted.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Despite the tendency of all rights to declare themselves absolute to their logical extreme, there are obviously limits beyond which the equal protection analysis may not be pressed… . The Fourteenth Amendment does not require absolute equality or precisely equal advantages,… nor does it require the State to equalize [prison] conditions." *Ross v. Moffitt*, 417 U.S. 600, 611-12 (1974) (internal quotation marks omitted); *Hammond v. Auburn University*, 669 F.Supp. 1555, 1563 (M.D.Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally.").  In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.  *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)."  *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).  "[O]fficial action will not be held unconstitutional solely because it results in a … disproportionate impact. …  Proof of … discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).

"'Discriminatory purpose' … implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker … selected … a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987).

Martin appears to allege that during his confinement in the Restricted Privilege Dorm as a protective custody inmate correctional officials did not afford him the same privileges as inmates confined in general population. Thus, Martin's "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. This claim likewise provides no basis for relief

> because [Martin] has not alleged … that he was treated differently on account of some form of ***invidious discrimination*** tied to a constitutionally protected interest. He has not even claimed that he was treated differently from others because of race, religion, or national origin. *See Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) ("The unlawful administration … of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991) (rejecting a claim that a state

prisoner's equal protection rights were violated because he received a longer sentence than some other prisoners and holding that "a mere demonstration of inequality is not enough; the Constitution does not require **identical** treatment. There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises: it is a settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." (internal quotation marks omitted)); *see also Cruz v. Skelton*, 543 F.2d 86, 92-93 (5th Cir.1976) (affirming dismissal of prisoner's equal protection claim because there was no allegation of "'invidious discrimination' based on such considerations as race, religion, national origin, or poverty").

*Sweet*, 467 F.3d at 1319 (emphasis in original). Consequently, the conclusory allegation of an equal protection violation entitles Martin to no relief in this cause of action.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

On or before **December 5, 2017**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the

District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 21st day of November, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge